## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**RANDALL BEA BEASLEY,**

>   **Plaintiff,**

**vs.**                                    **Case No.  1:15cv207-MP/CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the Social**
**Security Administration,**

>   **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's applications for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act (Act) and Supplemental Security Income (SSI) pursuant to Title XVI of the Act.  After consideration of the record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On January 14, 2013, and January 30, 2013, Plaintiff, Randall Bea

Beasley, filed applications for SSI and DIB, respectively, alleging disability

beginning June 22, 2008, based on injuries to his spine, chronic pain,

arthritis, chronic kidney stones, tumor in thyroid, and depression.  Tr. 24,

93, 237-47, 271, 275.  (Citations to the transcript/administrative record,

ECF Nos. 10 and 11, shall be by the symbol "Tr." followed by a page

number that appears in the lower right corner.)  Plaintiff's date last insured

for DIB was December 31, 2012.  Tr. 24, 26, 271.  Plaintiff is not entitled to

SSI benefits prior to January 20, 2012.  ECF No. 17 at 5 n.3; 20 C.F.R.

§ 404.603(b) (12 month rule).

Plaintiff's applications were denied initially on February 13, 2013,

Tr. 24, 93-120, and upon reconsideration on March 20, 2013.  Tr. 24, 121-

63, 167-78.  On April 11, 2013, Plaintiff requested a hearing.  Tr. 24, 179-

80.  On November 18, 2014, Administrative Law Judge (ALJ) Ken B. Terry,

held a video hearing.  Plaintiff appeared in Gainesville, Florida, and the ALJ

presided over the video hearing from Jacksonville, Florida.  Tr. 24, 43-92.

Mark Capps, an impartial vocational expert (VE), testified during the

hearing.  Tr. 24, 84-91, 229 (Resume).  Elizabeth F. Stakenborg, an

attorney, represented Plaintiff as the primary representative, Tr. 24, 164-66, 236, but Archie Blair, a para-legal, represented Plaintiff at the hearing.[1] Tr. 24, 43. 45.

On December 8, 2014, the ALJ entered a decision and denied Plaintiff's applications for benefits concluding that Plaintiff was not disabled from June 22, 2008, through the date of the decision.  Tr. 24-35.

On January 30, 2015, Plaintiff requested review of the ALJ's decision and filed a brief.  Tr. 11-13, 341-45 (Exhibit 17E).  On July 31, 2015, the Appeals Council considered the reasons Plaintiff disagreed with the ALJ's decision set forth in the brief submitted by Plaintiff's attorney, Tr. 341-45, and a residual functional capacity assessment from Michael Gower, M.D., dated February 27, 2015, Tr. 7-10, and concluded "that this information does not provide a basis for changing the [ALJ's] decision."  Tr. 1-6.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision making the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

On October 2, 2015, Plaintiff, by new counsel, filed a Complaint with the United States District Court seeking review of the ALJ's decision.  ECF

---

[1]  On September 25, 2013, Plaintiff's counsel provided the ALJ with a "request for an on the record decision," which briefed the pending issues and served as the opening statement for Mr. Blair.  Tr. 47, 188-94.

No. 1.  The parties filed memoranda of law, ECF Nos. 17 and 18, which

have been considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2012" for the purpose of DIB. Tr. 26.

2. "The claimant has not engaged in substantial gainful activity since June 22, 2008, the alleged onset date."  Tr. 26.

3. "The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post laminectomy, gastroesophageal reflux disease, a history of kidney stones, thyroid disease and generalized osteoarthritis."  Tr. 26-27. The ALJ considered Plaintiff's medically determinable mental impairment of depression and determined that it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore, nonsevere."  Tr. 27. The ALJ also considered the four broad functional areas set out disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments known as the "paragraph B" criteria and determined that Plaintiff had *no* limitation in activities of daily living; mild limitation in social functioning; *mild* limitation in concentration, persistence, or pace; and *no* episodes of decompensation, which have been of extended duration.  Tr. 27. The ALJ noted that Plaintiff "has never been hospitalized for a psychiatric impairment."  *Id.*

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 28.

5. "[T]he claimant has had the residual functional capacity [RFC] to perform light work with the ability to lift/carry and push/pull up to

twenty pounds occasionally and ten pounds frequently.  He could sit up to four hours at any one time for a total of eight hours in an eight-hour day as well stand and/or walk up to two hours at any one time for a total of six hours in an eight-hour day.  He must avoid climbing ropes, ladders or scaffolds.  He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl.  He must avoid concentrated exposure to extreme cold temperatures and vibration."  Tr. 28.

6.  "The claimant is capable of performing past relevant work as a high school teacher, an adult education teacher and a customer service representative.  This work does not require the performance of work-related activities precluded by the claimant's [RFC]."  Tr. 34.  The VE classified Plaintiff's past relevant work as high school teacher light exertion, skilled work with a Specific Vocational Preparation (SVP) level of seven according to the Dictionary of Occupational Titles (DOT), although the VE testified Plaintiff could perform the job as generally performed but not as actually performed because Plaintiff indicated he had to lift up to twenty pounds as he performed.  Tr. 34-35.  The vocational expert also classified a past job as steam fitter, heavy exertion and skilled with an SVP of 7; adult education teacher, light exertion and skilled with an SVP of 7; and customer service representative, sedentary exertion and skilled with an SVP of five.  *Id*.; *see* Tr. 132, 266-67, 287-91.  The VE further testified that Plaintiff could perform the jobs of an adult education teacher and the customer service representative both as generally performed in actually performed.  Tr. 35.  In comparing Plaintiff's RFC with the physical and mental demands of this work, the ALJ found that Plaintiff is able to perform it as generally performed.  *Id*.

7.  "The claimant has not been under a disability, as defined in the Social Security Act, from June 22, 2008, through the date of this decision."  *Id*.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is

supported by substantial evidence in the record and premised upon correct

legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131

(11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less

than a preponderance.  It is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." <u>Bloodsworth v.</u>

<u>Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); <u>accord</u>

<u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).  The court may not reweigh the evidence or substitute

its own judgment for that of the ALJ even if it finds that the evidence

preponderates against the ALJ's decision. <u>Moore</u>, 405 F.3d at 1211.[2]

"In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings; (2)

diagnosis of examining physicians; (3) subjective evidence of pain and

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'"  Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).[3]  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

---

[3]  The relevant DIB and SSI regulations are virtually identical.  As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise.  The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, *e.g.*, 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

§ 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

bears the burden of establishing a severe impairment that precludes the

performance of past relevant work.  Consideration is given to the

---

[4]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment"* describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## IV.  The Evidence

### A.  Background Information

The Plaintiff was 60 years old when his SSI and DIB applications were filed.  Tr. 50; 93.  20 C.F.R. § 404.1563(e) (a person of "advanced age" who is "closely approaching retirement age").  He was 62 years old at

the time of the hearing.  Tr. 50, 86.  The Plaintiff has a master's degree in

psychology and has worked as a high school teacher, steam fitter,

customer service representative, and adult education teacher.  Tr. 34, 53-

57, 85, 276.

## B.  The Medical Evidence

Plaintiff refers to several pages of the record in his memorandum.

ECF No. 17 at 7-14.  For the most part, these patient records were

considered by the ALJ.  Tr. 29-34.  Plaintiff does not argue that the ALJ

erred in not considering relevant and material portions of the record.  ECF

No. 17 at 15-25.  For completeness, the ALJ's RFC findings are set forth

below as annotated with citations to the record.

> A function report completed by the claimant on February 20, 2013
> noted complaints of constant pain in his ability to sit, lift, drive or do
> much of anything for more than a few minutes.  He reported doing
> household activities in small increments, but needed help with
> laundry and cleaning.  He spent about five minutes a day feeding his
> four cats.  He went shopping for food, clothes and household items.
> He also went out to attend medical appointments.  He reported being
> able to count change, pay bills and handle a checking or savings
> account, but indicated that he could not pay attention more than a few
> minutes.  The claimant reported difficulty thinking clearly due to the
> side effects of his medication.[5]  He had difficulty sleeping because of
> pain.  His ability to walk varied according to pain level and he would
> have to rest for thirty minutes before he could resume walking
> (Exhibit 6E) [Tr. 297-305].  A pain questionnaire completed by the

---

[5]  At step two, the ALJ considered Plaintiff's claims of side effects from taking
various drugs including hydrocodone.  Tr. 27.  The ALJ also considered these claims
throughout his RFC findings.  *See infra* at 11-12, 16.

claimant on February 15, 2013 noted reports of constant pain partially relieved by lying down.  Additional treatment included physical therapy, epidurals and steroids.  Sitting aggravated the pain.  The claimant reported having to do everything in small increments (Exhibit 5E) [Tr. 294-96].  The undersigned also considered the claimant's reported medications (Exhibits 14E & 16E) [Tr. 337, 339-40].

During the hearing, the claimant testified that he did not file his application initially because he thought he was going to get better. He reported missing 40 days of teaching due to complications caused by his disc herniations.  He used his savings and borrowed money to pay his bills.  He stated that he uses a rail and seat in the shower. He was able to use the microwave and did what he could as far as household chores on good days.  He visited his fiancés [sic] house three or four times a month.  They spend most of their time watching television.  He reported severe depression since early 2013 stating that he feels hopeless and exhausted most of the time and struggles to get out of bed.  He also reported a chronic sore throat alleviated with steroid therapy.  He denied any drug abuse history and never smoked.  He reported very little alcohol use.  He reported side effects of weight gain, mood disturbances and nausea from his medications [Tr. 49-84].

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.  The claimant waited for five years after he stopped working to file for disability [Tr. 58-59].  The fact that the claimant reported looking for a teaching job at a Community College suggests that he felt he could work [Tr. 62-63].  The record also shows very little evidence of treatment until 2012 or 2013.  This is not consistent with the claimant's alleged onset date of 2008.  Records note a long history of recurrent low back pain since 2002, yet the claimant previously worked in spite of this impairment.  The claimant did undergo surgery for his back problems in December 2013, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in

relieving the symptoms.   Although the claimant has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.   First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty as the claimant testified that he lives alone and stated that he does most all of his chores when he has good days.   Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.   The undersigned also notes that records indicate the claimant worked with horses (Exhibit 4F/page 45).   Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. Additionally, the claimant reports he is currently working towards his doctorate degree in psychology [Tr. 98, 106-07, 109, 561, 571-73 ("currently on sabbatical for PhD in organizational psych" as of Jan. 8, 2013)].  He has completed all of his coursework and is working on his dissertation [Tr. 509 (Feb. 19, 2013)].   These activities are also inconsistent with a finding of disability.

In terms of the claimant's alleged chronic pain, the undersigned has reduced the claimant to light work, with additional postural limitations and restrictions on his ability to sit, stand and walk at any one time.  The undersigned has also limited his exposure to heights in consideration of the side effects of his medications.  Records in March 2007 from treating physicians [sic] Dr. Wise, note a long history of recurring low back pain and osteoarthritis in the back.  The claimant reported having surgery in the 1990's but still had occasional pain and requested a renewal of hydrocodone.  He denied any particular problems that day (Exhibit 6F/page 20) [Tr. 669].  Subsequent records through 2008 note periodic visits for colds.  The first visit for back pain was in September 2010 without any acute injury.  Physical exam findings noted a normal gait and motor strength.   Treatment continued to consist solely of pain medication (Exhibit 6F/page 15) [Tr. 664].   The claimant did not return until November 2011 at which point he reported neck pain radiating into his left arm (Exhibit 6F/page 12) [Tr. 661].  Records note periodic visits in April and August 2012 and again in April

2013 for back pain and requests for pain medication refills. Records also note treatment for a sore throat and chronic cough. The claimant denied complaints of joint pain or neck pain (Exhibits 1F/page 6 and 6F/pages 2 & 7-10) [Tr. 351, 651, 656-59].  Physical exam findings in December 2012 noted a positive straight leg raise test.  However, motor strength was 5/5 with only mildly limited flexion in the lumbar spine (Exhibit 4F/page 67) [Tr. 563]. Physicians indicated that the claimant's radiculopathy remained unchanged for years and noted no evidence of foot drop or incontinence (Exhibit 4F/page 123) [Tr. 619].  A magnetic resonance imaging of the lumbar spine in December 2012 noted broad based disc bulging and degenerative disc disease at multiple levels but no more than mild foraminal narrowing (Exhibit 4F/page 68) [Tr. 408-09, 564].  Progress notes from Dr. Wise between August 2013 and August 2014 document continued treatment for chronic back and back pain as well as a chronic cough.  Dr. Wise continued to prescribe pain medication noting that the claimant was also receiving epidural steroid injections and physical therapy through the pain clinic (Exhibits 2F/pages 37, 12F, 14F and 16F) [Tr. 395, 1257-69, 1297-1300, 1402-05].  In January 2013, the claimant reported sitting exacerbated his pain, but walking alleviated it.  Physical exam findings noted decreased sensation to light touch in the left leg and tenderness to palpation, but no significant radicular symptoms.  He was able to walk without assistance. Physicians advised him to increase his activity level (Exhibit 4F/pages 74, 77 & 87) [Tr. 411, 570, 573-74].  On February 13, 2013, the claimant reported considerable improvement from his epidural allowing him to cut his hydrocodone in half. Unfortunately, this effect was short and only lasted a few weeks (Exhibit 4F/page 18) [Tr. 514]. He underwent a hemi laminectomy at L4 with a discectomy at L4-L5 in December 2013.  Discharge instructions indicated he should avoid strenuous activity and heavy lifting but only until his first follow up visit (Exhibits 10F/pages 11-12 and 331 & 15F/page 26) [Tr. 843-44, 1163, 1326].  In January 2014, he reported the pain was gone initially after the surgery, but then returned.  However, he indicated that his pain was controlled with medication rating it as a 4 on a scale of 1-10 (Exhibit 10F/page 19) [Tr. 851].  He reported driving more over the holidays might have aggravated his condition (Exhibit 10F/page 19) [Tr. 851].  A computed tomography of the cervical spine in February

2014 noted evidence of fusions at two levels with some foraminal narrowing at C5-6 and C6-7 but no evidence of disc protrusions (Exhibit 11F) [Tr. 1255-56].  Progress notes in March 2014 document that the claimant reported he was as active as he had been in years and described his pain relief as being on an "upward trajectory." (Exhibit 15F/page 80) [Tr. 1380].  A magnetic resonance imaging of the lumbar spine in July 2014 noted degenerative findings at multiple levels with mild foraminal narrowing.   The claimant rated his pain as a 5 on a scale of 1-10 (Exhibit 15F/pages 2 & 26) [Tr. 1302, 1326].  Records through October 2014 document treatment consisting of SI joint injections and lumbar medial nerve blocks.  The claimant reported 50% relief of his symptoms but stated it was temporary (Exhibit 17F/pages 9 & 14) [Tr. 1414, 1419].

Regarding the claimant's GERD, records in 2008 document that the claimant reported he was not having any reflux symptoms (Exhibit 6F/page 16) [Tr. 665].  Records from the Department of Veteran's Affairs document a mildly raspy voice, but this did not impede the claimant's ability to communicate with physicians or result in more than minimal limitations as far as work related activity.  Physical exam findings noted a normal laryngeal and hypo pharyngeal exam with no sign of laryngeal reflux (Exhibit 2F/pages 22-23) [Tr. 380-81].  A nasopharyngolaryngoscopy in February 2013 showed a benign right piriform sinus lesion.  The claimant reported being told his chronic sore throat might be a side effect of chronic hydrocodone use (Exhibit 4F/page 18) [Tr. 514].  Progress notes on February 6, 2013 document that the claimant denied dysphagia or heartburn. He reported having reflux events in the past, but indicated they were rare (Exhibit 4F/page 38) [Tr. 534].  A CT of the neck in June 2013 was normal (Exhibit 8F/page 7) [Tr. 680].  An EGD performed in March 2014 noted mild esophagitis and Barrett's esophagus, but doctors were unable to confirm whether this was the cause of the claimant's persistent sore throat (Exhibit 13F/page 6) [Tr. 1275].  No treating source has indicated any work related limitations related to the claimant's chronic sore throat and were unable to make further recommendations for treatment or evaluation other than medication (exhibit 8F/page 45) [Tr. 718].

Regarding the claimant's history of kidney stones, records indicate a history of kidney stones for over forty years with a reoccurrence every 5-6 years. The claimant has never required surgical intervention other than emergency room visits for antibiotics and pain medication. He was treated for nephrolithiasis in September 2012. A renal ultrasound confirmed 6mm and 2mm non-obstructing stones. When seen for a urology consult two weeks later, the claimant reported passing the stones spontaneously and his symptoms resolved. A follow up ultrasound in October 2012 showed no further stones (Exhibit 4F/pages 95 & 117) [Tr. 591, 613].

The undersigned has also considered the claimant's osteoarthritis, in reducing him to light work with the additional standing and walking limitations outlined above. The undersigned has also assigned additional environmental limitations reducing his exposure to extremes of cold in light of its exacerbating effects on his arthritis. Records document complaints of left shoulder pain. X-rays of his left shoulder in September 2012 showed mild to moderate arthritis (Exhibit 4F/pages 119-120) [Tr. 615-16]. The undersigned has considered this impairment in reducing the claimant to light work and precluding him from climbing ladders, ropes and scaffolds. X-rays of the left foot in May 2013 also showed moderated degenerative changes (Exhibit 8F/page 10) [Tr. 683]. The claimant was also seen by a podiatrist for a bunion, but he was undecided about surgical intervention (Exhibit 8F/page 24) [Tr. 697].

In choosing not to assign visual limitations, the undersigned acknowledges that the claimant was recently diagnosed with glaucoma, but notes indicate that he was able to see with glasses. Treatment consisted of eye drops (Exhibit 4F/page 12) [Tr. 508]. Progress notes in February 2013 document that the claimant reported his visual acuity was stable (Exhibit 4F/page 20) [Tr. 516]. The claimant underwent a blepharoplasty in April 2013 without complication (Exhibit 8F/page 47) [Tr. 720]. Progress notes in March 2014 note early cataracts and physical exam findings revealed best corrected vision of 20/20 (Exhibits 8F/page 47 & 15F/page 79) [Tr. 720, 1379].

Regarding the claimant's depression, records do show complaints of increasing depression in 2013 and 2014. Treatment consisted of

medication adjustments.  Mental status exam findings in October 2013 continued to reflect no more than mild limitations with intact attention, concentration and memory (Exhibit 10F/page 181) [Tr. 1013].  Progress notes in 2014 continued to note a mildly depressed mood and the claimant denied any side effects from the medication (Exhibit 10F/pages 15, 24 & 26) [Tr. 847, 856, 858].  Progress notes in October 2014 document an interactive and appropriate mood.

As for the opinion evidence, on June 19, 2013, examining psychologist, Anne Freund, PhD, opined that the claimant had the following mental functional limitations: marked restrictions of activities of daily living; marked difficulties maintaining social functioning; marked deficiencies of concentration, persistence or pace; and four or more episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from the situation or to experience exacerbation of signs and symptoms [Tr. 670-73 (Residual Mental Capacity Assessment-Exhibit 7F)].[6]  Dr. Freund reported that the claimant had extreme limitations in his ability to maintain attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress.  She also indicated that the claimant would have marked restrictions in his ability to sustain an ordinary routine without special supervision.  She further indicated that the claimant was moderately limited in his ability to remember work-like procedures; work in coordination with or proximity to others without being unduly distracted; and respond appropriately to changes in a routine work setting.  Dr. Freund reported that the claimant was expected to be absent from work more than three times a month because of her impairments and/or treatment.  Dr. Freund also noted that the claimant would constantly experience pain or other symptoms, which become severe enough to interfere with attention and concentration needed to perform even simple work tasks.  The doctor opined that the claimant's chronic pain and depression resulted in these restrictions existing since June 2008.

---

6   As noted herein, the record includes Dr. Freund's patient notes from the VA Medical Center dated February 19, 2013, Tr. 508-15, and May 20, 2013, Tr. 758-59.

She indicated a current global assessment of functioning of 50 due to chronic pain and an inability to complete his Ph.D. but noted his highest global assessment of functioning in the last year was 70 (Exhibit 7F) [Tr. 670-73; *see* Tr. 731; *see also infra* at n.7]. The undersigned gave little weight to the opinion of Dr. Freund as the objective mental status exam findings in the substantial evidence of record, do not support the severity of such limitations. Therefore, it is not entitled to controlling weight or special significance (Social Security Ruling 96-2p). Specifically, mental status exam findings from Dr. Freund on June 19, 2013 note good attention and concentration, intact memory and an appropriate affect. [Tr. 731; see 512-13] These findings are inconsistent with her proposed limitations. Progress notes also document that the forms were initiated at the request of the claimant's attorney (Exhibit 8F/page 58) [Tr. 731]. Additionally, the undersigned notes that records indicate the claimant had a Master's Degree in education and was pursuing a Ph.D. The record shows little evidence of treatment for mental health issues prior to the date last insured. There is some mention of depression as a side effect of the claimant's in September 2012, but the claimant reported his symptoms were relieved once he stopped the medication (Exhibit 4F/page 106) [Tr. 602]. Additionally, a psychological consult in February 2013 [by Dr. Freund] noted a global assessment of functioning of 70 suggesting that he was experiencing some mild symptoms but generally functioning pretty well [Tr. 513; see infra at n.7]. Based on the totality of evidence, the undersigned does not find Dr. Freund's global assessment of functioning of 50 to be a reliable measure of functional ability it reveals only a picture in time and does not necessarily correlate with disability. The Commissioner has specifically declined to endorse the GAF scale for use in disability programs and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listing." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Red Reg. 50765 (August 21, 2000).[7]

---

7  The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) includes the GAF Scale that is primarily used by mental health practitioners. The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure."

On September 10, 2013, Ashley Parks, MSN, PMHNP-BC, ARNP, Staff Nurse Practitioner, Board Certified in Psychiatric/Mental Health Nursing reported that she has been treating the claimant since February 2013 for a depressive disorder.  She also reported that her colleague, Malcolm Randall, had been treating the claimant for chronic pain since September 2012.  Ms. Parks opined that the claimant was "unable to work or continue his education." (Exhibit 9F) [Tr. 832]. The undersigned gave no weight to this statement for a few reasons.  First, the determination of whether a claimant is unable to work is an opinion on an issue reserved to the Commissioner.  Therefore, the opinion is not entitled to controlling weight or special significance (SSR 96-5p).  Second, the regulations at 20 CFR 404.1513 and 416.913(a) list acceptable medical sources and medical reports, which establish impairments.  As a Nurse practitioner and mental health counselor, Ashley Parks is not an acceptable medical source and this opinion, standing alone, cannot constitute documentation of severe or disabling vocational limitations. This report, however, has been considered with respect to severity and effect on function (Social Security Ruling 06-3p) [SSR 06-03p, 2006 SSR LEXIS 5, at *4-5 (Aug. 2, 2006)].  Additionally, the intensity of treatment does not support such severe limitations of functioning.

---

*See* DSM-IV-TR 32-34.  The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale.  *Id.  See* Nichols v. Astrue, Case No. 3:11cv/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing the GAF scale).  A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning. DSM-IV-TR at 34.  A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*  A GAF scale rating of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well and has some meaningful interpersonal relationships.  *Id.*  The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"  Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).  In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) (2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.  In order to provide a global measure of disability, the WHO DSM-5 (see the chapter "Assessment Measures")."  DSM-5 at 16.

The claimant has never been hospitalized for a mental health impairment or received psychological counseling.

The undersigned also considered a pre-hearing memorandum submitted by the claimant's representative dated September 25, 2013 (Exhibit 10B) [Tr. 188-94]. Mr. Blair points out that the claimant has an excellent work record and his work history should reflect favorably on the claimant's credibility. However, the undersigned also notes that the claimant alleges disability beginning June 22, 2008 yet did not file his applications until almost five years later in January 2013 (Exhibits 1D & 2D) [Tr. 237-47; *see* Tr. 58-59]. Mr. Blair also contends that the claimant's ability to perform his past relevant work should be precluded based on the opinion evidence rendered by the claimant's psychologist Dr. Freund. However, the undersigned did not find this opinion persuasive for the reasons previously outlined above.

The state agency medical consultant determined that the claimant could perform the exertional requirements of light work involving occasional postural limitations and no concentrated exposure to extremes of cold or vibration. The state agency psychologists determined that the claimant's mental impairments were not "severe" as defined in the regulations (Exhibits 8A & 9A) [Tr. 121-48]. The undersigned gave significant weight to the determinations of the state agency physician regarding the claimant ability to perform light work as the state agency psychologist regarding the claimant's non severe mental impairment.

The undersigned is aware of the physical residual functional capacity assessment completed by a single decision maker (SDM) (Exhibits 1A & 2A) [Tr. 93-113]. However, this evidence is given no weight and no consideration, as an SDM is not a medical source (SSR-06-3p). Any similarities between the opinion of the SDM and the residual functional capacity established in this decision arise solely from the consistency of the evidence.

In sum, the facts in the record do not dispute that the claimant has conditions, which singly or in combination, may cause him pain. However, the evidence suggests that the claimant's symptoms may not exist at such a level of severity as to render the claimant unable

to engage in work activity as assumed by the claimant's testimony at hearing.  The above residual functional capacity, as determined by the undersigned, gives adequate weight to the facts as determined credible.

Tr. 29-34.

## V.  Legal Analysis

### Substantial evidence supports the ALJ's finding that Plaintiff's statements about his symptoms were not entirely credible.

Plaintiff argues that the ALJ's credibility determination is not

supported by substantial evidence.  ECF No. 17 at 15-25.

When a claimant attempts to establish a disability based on his

subjective complaints, he must provide evidence of an underlying medical

condition in either objective medical evidence confirming the severity of the

alleged symptoms or that the medical condition reasonably could be

expected to give rise to the alleged symptoms.  *See* 20 C.F.R.

§ 404.1529(a) and (b); Wilson, 284 F.3d at 1225-26.

Pain is subjectively experienced by the claimant, but that does not

mean that only a mental health professional may express an opinion as to

the effects of pain.  One begins with the familiar way that subjective

complaints of pain are to be evaluated:

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence

> confirming the severity of the alleged pain; or (b) that the
> objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.

Wilson, 284 F.3d at 1225.  *See* 20 C.F.R §§ 404.1529 (explaining how

symptoms and pain are evaluated); 404.1545(e) (regarding RFC, total

limiting effects).[8]  This is guidance for the way the ALJ is to evaluate the

claimant's subjective pain testimony because it is the medical model, a

template for a treating physician's evaluation of the patient's experience of

pain.

To analyze a claimant subjective complaints, the ALJ considers the

entire record, including the medical records; third-party and Plaintiff's

statements; the claimant's daily activities; the location, duration, frequency,

and intensity of pain or other symptoms; the type and dosage,

effectiveness, and side effects of medication; precipitating and aggravating

factors; treatment, other than medication, received for pain or other

symptoms; and other factors concerning functional limitations and

restrictions.  20 C.F.R § 404.1529(c)(3)(i-vii).  The Eleventh Circuit has

stated: "credibility determinations are the province of the ALJ."  Moore, 405

---

[8]  Although the ALJ did not expressly refer to the three-part part standard, it is
clear that the ALJ's findings, discussion, and citation to 20 C.F.R. §§ 404.1529 and
416.929, Tr. 28, indicate that the pain standard was applied.  Wilson, 284 F.3d at 1226.

F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.").

Although not dispositive, the ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  20 C.F.R. § 404.1529(c)(3)(i); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

At step two, the ALJ determined that Plaintiff had several severe impairments, including degenerative disc disease of the cervical and lumbar spine, status post laminectomy, gastroesophageal reflux disease, a history of kidney stones, thyroid disease, and generalized osteoarthritis. Tr. 26-27.

Once the ALJ decided that Plaintiff's physical or mental impairments could reasonably be expected to produce his pain or other symptoms, the ALJ was required to evaluate the intensity, persistence, and limiting effects of his symptoms to determine the extent to which they limit his functioning. "For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the

credibility of the statements based on a consideration of the entire case record."  Tr. 29.  The ALJ performed this analysis and determined Plaintiff's RFC after a thorough review of the record.  Tr. 28-34.

The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not "entirely credible" because they were inconsistent with the evidence of record.  Tr. 29-34.  The ALJ considered that Plaintiff received little treatment between 2008, when he allegedly became disabled, and 2010; that Plaintiff's treatment records after 2010 generally indicated mild-to-moderate findings and conservative treatment; and that Plaintiff sought employment and continue to work toward his doctorate during the time he was allegedly disabled.[9]  Tr. 29-30.

Plaintiff reported experiencing back pain as far back as the 1990s and did not seek treatment for it until after the alleged onset date.  In March 2007, treating physician Dr. Wise noted a long history of recurring low back pain and osteoarthritis in Plaintiff's back.  Tr. 669.  Plaintiff reported having

---

[9]  During the hearing, the ALJ asked Plaintiff why he did not file for disability for five years after he alleged that he was disabled in 2008.  Tr. 58.  Plaintiff responded: "I didn't want to file it when I did file.  I've always believed that I was going to get better.  I -- I never really saw myself as being disabled.  I just continued to - you know, my health continued to get worse at just got to the point I really didn't know what else to do." Tr. 58-59.  A January 8, 2013, patient note from a neurosurgeon consult at the VA Medical Center in Lake City stated, in part: "Currently on sabbatical for PhD in organizational psych."  Tr. 571; *see* Tr. 98, 106-07, 109, 561.

surgery in the 1990s, but had occasional pain and requested a renewal of

hydrocodone.  *Id.*  He denied any particular problems that day.  *Id.*

Subsequent records through 2008 note periodic visits for colds, but not for

back pain.  Tr. 665-67.  The ALJ noted that the lack of treatment for back

pain in 2008 and 2009, after the alleged onset date, contradicted Plaintiff's

claim to experience disabling symptoms during those years.  Tr. 29-30.

Plaintiff received conservative treatment and examinations of his

back showed only mild-to-moderate findings.  The first visit for back pain

after the alleged 2008 onset date was in September 2010.  Tr. 663-64.

Physical examination noted a normal gait and motor strength.  Tr. 664.

Treatment continued to consist of pain medication, Tr. 664, and Plaintiff did

not return for treatment until November 2011 at which point he reported

neck pain radiating into his left arm.  Tr. 661; *see* Tr. 30.

As found by the ALJ, "[r]ecords note periodic visits in April and

August 2012 and again in April 2013 for back pain and requests for pain

medication refills."  Tr. 30; *see* Tr. 351, 651, 655-56.  Plaintiff denied

complaints of joint pain or neck pain.  Tr. 351, 651, 657.  Physical

examination findings in December 2012 showed motor strength was 5/5

with only mildly limited flexion in the lumbar spine.  Tr. 563.  Plaintiff's

radiculopathy had remained unchanged for years.  Tr. 619.  A magnetic

resonance imaging (MRI) of the lumbar spine in December 2012 noted broad based disc bulging and degenerative disc disease at multiple levels, but no more than mild foraminal narrowing.  Tr. 564; *see* Tr. 30.

Progress notes from Dr. Wise between August 2013 and August 2014 document that he continued to prescribe pain medication, noting that Plaintiff was also receiving epidural steroid injections (SI) and physical therapy through the pain clinic.  Tr. 395, 1257-69, 1297-1300, 1402-05; *see* Tr. 30.  In January 2013, Plaintiff reported that sitting exacerbated his pain, but walking alleviated the pain.  Tr. 570.  Physical examination findings noted decreased sensations to light touch in the left leg and tenderness to palpation, but no significant particular radicular symptoms.  Tr. 572-73.  Plaintiff was able to walk without assistance and physicians advised him to increase his activity level.  Tr. 570, 573-74, 583.

Plaintiff underwent a hemi laminectomy at L4 with a discectomy at L4-L5 in December 2013.  Tr. 843-44, 1326; *see* Tr. 31.  Discharge instructions indicated he should avoid strenuous activity and heavy lifting, but only until his first follow-up visit.  Tr. 843-44, 1163.  In January 2014, Plaintiff reported the pain was gone initially after the surgery, but then returned.  Tr. 851.  Plaintiff indicated that his pain was controlled with

medication, rating it as usually a 4 on a 1-10 scale.  *Id.*  Plaintiff reported driving more over the holidays might have aggravated his condition.  *Id.*

A computer tomography of the cervical spine in February 2014 noted evidence of fusions at two levels with some foraminal narrowing at C5-6 and C6-7, but no evidence of disc protrusions.  Tr. 1255-56.  Progress notes in March 2014 document that Plaintiff reported he was as active as he had been years and described his pain relief as on an "upward trajectory."  Tr. 1380.  An MRI of Plaintiff's lumbar spine in July 2014 noted degenerative findings at multiple levels with only mild foraminal narrowing. Tr. 1302-03; 1306; *see* Tr. 31.  Plaintiff rated his pain as 5 on a scale of 1-10.  *Id.*  Records through October 2014 document treatment consisting of SI joint injections and lumbar medial nerve blocks.  Plaintiff reported 50% relief of his symptoms, but stated it was temporary.  Tr. 1414, 1419.

Except for the hemi laminectomy and discectomy performed in December 2013, Plaintiff's treatment was generally conservative and objective testing consistently showed only mild-to-moderate findings.  *See, e.g.*, Tr. 851.  The treatment records recited above and considered by the ALJ did not support Plaintiff's testimony that he had disabling limitations.[10]

---

[10]  The ALJ considered other medical evidence relating to Plaintiff's glaucoma, GERD, kidney stones, and osteoarthritis.  Tr. 31-32.

In addition, the ALJ noted that Plaintiff had completed coursework for a Ph.D. and worked on his dissertation after the alleged onset date, indicating that he had greater capabilities than he alleged.  Tr. 30-31.  A January 8, 2013, patient note from a neurosurgeon consult at the VA Medical Center in Lake City stated, in part: "Currently on sabbatical for PhD in organizational psych."  Tr. 571; *see* Tr. 98, 107-08, 109.  It was noted by Dr. Freund, however, on May 20, 2013, that Plaintiff was "discouraged about not being able to work on his dissertation research, but is unable to concentrate as a result of the pain."[11]  Tr. 758; *see* Tr. 509, 807, 856.  Plaintiff also continued to look for work at a community college after the alleged onset date, which the ALJ observed suggested that he remained capable of working.  Tr. 29, 62-63.

In the argument portion of his memorandum, Plaintiff refers to "the importance of the combined effect of the opinions of Dr. Wise [and] Dr. Freund [in] light of the defendant Commissioner's ruling SSR 3-10."

---

[11]  In the same May 20, 2013, patient notes, Dr. Freund noted, in part, Plaintiff's motor behavior reflected no abnormal movements; his attention and concentration were good; his speech was goal-oriented, relevant, and logical; he was oriented and his memory was intact to conversation; his affect was appropriate, but under mood it was noted – "I feel lost, about the same"; and his insight and judgment were good.  Tr. 758. Dr. Freund assessed Plaintiff's GAF score of 70, Tr. 759, the same GAF score assessed on February 19, 2013, Tr. 513.  As noted herein, Dr. Freund assessed Plaintiff's current GAF score of 50 on June 19, 2013, as part of her residual mental capacity assessment, Tr. 670, a fact noted by the ALJ and rejected as an indicator of disability, Tr. 33.  *See supra* at n.7.

ECF No. 17 at 21.  The ALJ considered Dr. Wise's relevant treatment notes, which generally show a history of conservative treatment and mild-to-moderate objective findings that do not support the credibility of his claim to have disabling limitations.  Tr. 30-31.  (Plaintiff does not suggest the ALJ overlooked any relevant patient notes from Dr. Wise.)

The ALJ considered the opinion evidence, including patient notes from examining and VA Medical Center staff psychologist, Dr. Freund. Tr. 32-33.  The ALJ gave little weight to the opinion of Dr. Freund as the objective mental status exam findings and the substantial evidence of record, "did not support the severity of such limitations" and, as a result, was "not entitled to controlling weight or special significance." Tr. 33 (citation omitted).  The ALJ specifically mentioned the mental status exam findings from Dr. Freund on June 19, 2013, that noted Plaintiff had good attention and concentration, intact memory, and appropriate affect, which findings were inconsistent with Dr. Freund's proposed limitations.  *Id.* Additionally, Plaintiff had a negative screen for depression in 2012. Tr. 470.  Although Plaintiff later had a positive screen for depression in February 2013, Tr. 510, on the same date he was also noted to have a GAF score of 70, indicating he had only mild symptoms and was generally functioning pretty well.  Tr. 513; *see supra* at n.7.  The ALJ considered

Dr. Freund's GAF scores (spanning a highest score of 70 and a current score of 50 on June 19, 2013, *see, e.g.*, Tr. 670) and determined based on the totality of the evidence that Dr. Freund's GAF score of 50 was not a reliable measure of Plaintiff's functional ability.  Tr. 33; *see supra* at n.7. Substantial evidence supports the ALJ's consideration of Dr. Freund's opinion.  *See* Kent v. Acting Comm'r of the Soc. Sec. Admin., No. 15-15059 (11th Cir. June 7, 2016).

The ALJ did not rely solely on Plaintiff's activities in evaluating the credibility of his subjective complaints, nor did the ALJ find Plaintiff's activities to be dispositive evidence of his ability to work.[12]  Rather, the ALJ considered Plaintiff's activities with other evidence in the record, Tr. 27-34. 20 C.F.R. § 404.1529(c)(3)(i); Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005); Macia v. Bowen, 829 F.2d at 1012.

Given the record as a whole, the ALJ properly applied the case law and regulations for evaluating subjective complaints, weighed the evidence, and found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not "entirely credible."  Tr. 29-30.

---

[12]  Ultimately, based in part on testimony of a vocational expert, the ALJ determined that Plaintiff was capable of performing past relevant work as a high school teacher, an adult education teacher, and a customer service representative, which did not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 34-35, 86-91.  Substantial evidence supports this determination.  *See* Jones v. Apfel, 190 F.3d at 1228-29.

The ALJ found the objective medical evidence did not support the severity of symptoms Plaintiff allegedly experienced, which the ALJ is allowed to consider.  Tr. 29-34.  The ALJ's decision reflects that he properly considered Plaintiff's subjective complaints, the objective medical findings, and other relevant evidence in assessing Plaintiff's RFC and the credibility of Plaintiff's allegations of disabling limitations.  20 C.F.R § 404.1529(c)(2); Wilson, 284 F.3d at 1225-26.

The ALJ did not violate the pain standard because, although the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the ALJ articulated explicit and adequate reasons for discrediting his subjective testimony, which was critical to his claim. *See* Wilson, 284 F.3d at 1255; Marbury, 957 F.2d at 839.

The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in the testimony, and to determine the case accordingly.  Wheeler, 784 F.2d at 1075.  Even if the Court disagrees with the ALJ's resolution of the factual issues and would resolve these issues differently, the ALJ's decision must be affirmed where it is supported by substantial evidence.  In this case, substantial evidence supports the ALJ's finding the Plaintiff's statements about his symptoms were not "entirely credible."  Substantial evidence supports the ALJ's assessment of Plaintiff's

RFC and Plaintiff did not prove he had additional limitations on his ability to work.

## VI. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED** and judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on June 10, 2016.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**